660 So.2d 952 (1995)
In re M.F., Wife of/and S.J.T. Applying for Intrafamily Adoption.
No. 95-CA-649.
Court of Appeal of Louisiana, Fifth Circuit.
August 30, 1995.
Writ Denied November 3, 1995.
Charles W. Fasterling, Metairie, for plaintiffs/appellees.
Lawrence P. Parks, III, Dale Parks, Greer, SC, in pro per.
John Spinks, Homer, in pro per.
Before GOTHARD and CANNELLA, JJ., and CHEHARDY, J. Pro Temp.
GOTHARD, Judge.
John Spinks appeals a decision of the Juvenile Court which terminates his parental rights in an ancillary proceeding to an intrafamily adoption. We affirm.
Mr. Spinks is the biological father of two minor children ages 9 and 6. He is currently incarcerated after pleading guilty to manslaughter in connection with the March 6, 1992 shooting death of the children's mother. The maternal grandparents have cared for the children since that time, and were granted permanent custody of the children by court order dated May 4, 1992. On December 22, 1994 the grandparents filed a "Petition for Intrafamily Adoption". The petition was served on both the legal father (Lawrence Parks) and the natural father (John Spinks).
Mr. Spinks filed an opposition to the adoption in accordance with Louisiana Children's Code Article 1137. After two hearings in the matter, the Juvenile Court rendered judgment on June 19, 1995, terminating Mr. Spinks' parental rights. Mr. Spinks appeals that judgment. The matter was set on the docket of this Court in an expedited manner in accordance with Louisiana Children's Code Article 1143.
Appellant did not file a brief with this Court as ordered; nonetheless, we have reviewed the entire record. We find no manifest error in the Juvenile Court's decision. In the decision of this court, we adopt the *953 lower court's well written, thoughtful reasons as follows:
. . . . .
FACTS
B.P. and J.T. were born during the marriage of their mother to Lawrence Parks, from whom the mother was never divorced. Some time after she separated from Mr. Parks, the mother and children began residing with Mr. Spinks, the alleged father of the children. On or about March 6, 1992, Mr. Spinks shot and killed the children's mother at their home while the children were at home.
On March 24, 1992, the maternal grandparents were granted temporary custody of the children and on April 30 they were granted permanent custody, with the consent of Mr. Spinks. The children have continued to remain with their grandparents.
Mr. Spinks pled guilty to homicide on July 28, 1992 and was sentenced on August 31, 1992 to 7 years at hard labor, and made ineligible for parole for 5 years.
LAW
Article 1193 of the Children's Code identifies the persons whose consent is necessary for an adoption. A father's consent is required when the father is considered by law to be a "legal" father under paragraph (2), when the alleged father has established his parental rights under paragraph (3), or when the paternity of the biological father has been determined by judgment of filiation and the father has established his parental rights.
The evidence presented to this court indicates that Mr. Spinks falls into the category of alleged fathers who must first establish their parental rights in accordance with Chapter 10 of Title XI of the Children's Code.
Mr. Spinks was afforded his procedural rights to notice and an opportunity to be heard. Substantively, Article 1137 provides that, in order to establish his parental rights, the alleged father must demonstrate to the court his affirmative efforts to establish or maintain a parental relationship with the child.
As most recently stated by the Louisiana Supreme Court in State of Louisiana in the Matter of R.E., No. 94 CK 2663 (11/9/94), 645 So.2d 205, "the burden of proof is upon the father to show the preservation of his opportunity to establish parental rights by proving these interrelated elements by a preponderance of the evidence."
Article 1137(B) states that relevant evidence may include proof of attempted legitimation of the child, formal acknowledgment of the child, declaration of paternity filed with the putative father registry, adjudication of paternity or provision of substantial parental care and support to the child.
Article 1138 requires the court to decide if the father has established or forfeited his parental rights. The court is mandated to consider the father's fitness and his commitment to parental responsibilities, including his attempts to establish or maintain a relationship with the child.
The R.E. option states as follows:
In accordance with this court's decision in In re B.G.S., supra, the statutes contemplate that the unwed father's constitutionally protected interest in a parent-child relationship does not come into existence until the father demonstrates his fitness for parental responsibilities, commitment to those responsibilities, concrete actions taken to grasp his opportunity to be a father, and the potential for him to make a valuable contribution to the child's development.
APPLICATION OF LAW
The two children sought to be adopted herein are legitimate, having been born during the marriage of their mother to Mr. Parks, but they are not the legitimate children of Mr. Spinks. Mr. Spinks did not legitimate the children by marrying their mother nor by executing a formal act of legitimation. Mr. Spinks testified that he and the children's mother once consulted counsel about procuring a divorce for her, *954 but that no further steps were ever taken. Mr. Spinks did not execute formal acknowledgments of the two children prior to his notice of these proceedings. Upon notification, Mr. Spinks executed an acknowledgment of the one child he thought was the sole object of this adoption. Neither did Mr. Spinks ever file a declaration of paternity of either child with the putative father registry or initiate a paternity action relative to the children.
What Mr. Spinks did do was to actually live with the children and their mother in a family type of situation. This court finds that Mr. Spinks has shown that, prior to the homicide of the mother, he did provide parental care and support to the children and had an established parental relationship with them. The evidence suggests that the home life was somewhat chaotic, including drinking, arguing and yelling. In fact, the children's therapist testified that the children could not recall during therapy any happy times with Mr. Spinks, only with their mother.
But whatever the quality of their relationship had been, it was substantially altered by the killing of the children's mother by Mr. Spinks. By his deliberate act of shooting twice and killing their mother in their home while they were also at home, Mr. Spinks evidenced a careless disregard for the well-being of these children and a questionable commitment to parental responsibilities.
The testimony of the children's therapist enabled this court to understand the state of mind of the children created by their father's criminal act. The therapist's observations were consistent with the behaviors reported by the grandparents and her opinion was both credible and professional. Her testimony clearly convinces this court that Mr. Spinks' act alienated the children and destroyed their relationship with him, particularly with regard to trust, and that he cannot effectively maintain a parental relationship with the children.
Ch. C. art. 1138 requires this court to consider also the fitness of Mr. Spinks for parental responsibilities. The fact that Mr. Spinks killed the children's mother in their home raises a serious question of his fitness to parent. More practically, Mr. Spinks will continued to be incarcerated for a minimum of two more years, and possibly 4 more years. He will be physically unable to provide care and support for the children during his incarceration. What he may or may not be able to physically provide after his release is only speculative. From a psychological standpoint, it was the professional opinion of the children's therapist that they should never have to see him again, and that any possibility of future contact would depend on the motivation of Mr. Spinks to get the knowledge and experience needed to face the children.
Testimony of Mr. Spinks indicates a consistent minimization of his crime and a lack of insight into the considerable impact his actions have had and will continue to have on the children. The behaviors exhibited by the children and the feelings and ideas that they have verbalized to others indicate their extreme fear of Mr. Spinks. In considering the potential of the father to make a valuable contribution to the development of the children, this court finds the conclusions of the children's therapist most credible: that safety is of paramount importance to the health and well-being of the children. The most valuable contribution Mr. Spinks could make would be to secure that safety by allowing the proposed adoption to take place.
Therefore, in accordance with Ch. C. article 1138(B), this court concludes that Mr. Spinks has forfeited his parental rights and decrees that his parental rights are terminated.
For the foregoing reasons the ruling below is affirmed and the matter remanded for further proceedings.
AFFIRMED AND REMANDED.